In re Randy BROKMEYER and Charlotte Brokmeyer, d/b/a Hydro Systems, Welsco Drilling Company and B & B Hog Farm, Debtors.

NEW ULM STATE BANK, Movant,

v.

Randy BROKMEYER and Charlotte Brokmeyer, d/b/a Hydro Systems, Welsco Drilling Company and B & B Hog Farm, Respondents.

Bankruptcy No. 85–00417–H3–3.

United States Bankruptcy Court, S.D. Texas, Houston Division.

May 24, 1985.

Carol L. Kessler, of Hallie W. Gill, Houston, Tex., for Randy Brokmeyer and Charlotte Brokmeyer.

Mitchell J. Buchman, Eikenburg & Stiles, Houston, Tex., for New Ulm State Bank.

OPINION

DAVID W. HOUSTON, III, Bankruptcy Judge.

Came on for hearing the motion filed by New Ulm State Bank seeking relief from the automatic stay; response to said motion filed by the Debtors; all parties being represented by their respective attorneys of record; on proof in Open Court; and the Court having heard and considered same finds as follows, to-wit:

I.

This Court has jurisdiction of the subject matter and the parties to this proceeding pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157.(a). This matter is a core proceeding as defined in 28 U.S.C. § 157(b)(2)(G).

This Court entered a temporary order relative to certain features of this proceeding on April 25, 1985; the terms of said order are incorporated herein by reference.

II.

Hydro Systems Technology Corporation, hereinafter referred to as Hydro, was incorporated under the laws of the State of Texas on or about October 1, 1979, and acquired a certain parcel of real property, a part of which is the subject matter of this litigation, from Edward E. Smith as evidenced by a deed, dated November 1, 1979, recorded in Volume 421, page 580, of the deed records of Austin County, Texas. Title to this real property remains vested in the corporate entity. On September 15, 1982, the privileges of Hydro to do business as a corporation were forfeited for the

non-payment of franchise taxes. Subsequently, on February 21, 1983, the charter of the corporation was forfeited for failure to pay the aforesaid franchise taxes through a determination of forfeiture issued by the Texas Secretary of State.

### III.

Subsequent to the forfeiture of privileges and the forfeiture of charter noted immediately hereinabove, Hydro executed a promissory note on November 7, 1983, in the principal sum of $90,000.00, payable to New Ulm State Bank. This note was in part a renewal of a previously executed promissory note, and in part an extension of new credit. The note was secured by a deed of trust encumbering the corporate real property, as well as, by a security agreement and financing statement encumbering certain items of machinery and equipment. A copy of the promissory note, the deed of trust secured by the Hydro property, the security agreement and financing statement, the corporate resolution authorizing the transaction, and the individual guaranty of the Debtor, Charlotte Brokmeyer, were all admitted into evidence.

### IV.

■ Initially, the validity of the deed of trust was made an issue because it was executed at a time subsequent to the forfeiture of privileges to do business as a corporation and the forfeiture of the corporate charter. However, the Debtors have now conceded that these two events did not preclude the corporation from legally encumbering its real property. As such, this issue has become moot. Having considered the opinions set forth in *Greig v. First National Bank of San Angelo*, 511 S.W.2d 86, 89 (Tex.Civ.App.—1974), and *R.J. Carter Enterprises, Inc. v. Greenway Bank and Trust of Houston*, 615 S.W.2d 826 (Tex.Civ.App.—1981), the Court concurs with the accord reached by the parties in resolution of this issue.

### V.

■ As a second issue, the Debtors contend that the Hydro property is a part of their homestead and as such, could not have been constitutionally encumbered by the New Ulm State Bank deed of trust. See Article XVI, § 50, adopted November 6, 1973, Constitution of the State of Texas which provides, inter alia, that no mortgage, trust deed, or other lien on the homestead shall ever be valid, except for the purchase money therefor, or improvements made thereon, whether such mortgage, or trust deed, or other lien, shall have been created by the owner alone, or together with his or her spouse. In this context, the Court notes the following factual circumstances which were adduced by the evidence:

A. Since November 1, 1979, the subject real property has been vested in Hydro Systems Technology Corporation, a Texas corporation, whose stockholders now consist of the Debtor, Charlotte Brokmeyer, and her three minor daughters.

B. Although the privileges to conduct business as a corporation and the corporate charter had been previously forfeited, this corporation apparently could validly encumber its real property.

C. Although Mrs. Brokmeyer and her family had lived on the corporate property at one time, she had not done so within the three year period preceding the date of this hearing, and as such, she was not occupying the property for residential purposes when the loan transaction in question was entered into in November, 1983.

D. The only commercial activity being conducted on the subject property is the planting and harvesting of a modest hay crop utilized in feeding hogs, maintained by the Debtors on other property. According to the testimony, the property has not been utilized for any other commercial purposes in recent years. In the opinion of the Court, the singular activity of the growing of a hay crop on this property does not provide the Debtors with a meaningful or substantial source of income and support. In addition, it does not appear to be used as

a place to exercise the calling or business of the purported homestead claimants as contemplated under Article XVI, § 51 of the Constitution of the State of Texas.

E. The Debtors have made no declaration of the Hydro property as their homestead; rather, their declaration has applied specifically to the residential property which they now occupy approximately one and one half miles from the corporate property.

For the foregoing reasons, the Court is of the opinion that the real property owned by Hydro Systems Technology Corporation does not qualify as homestead property of any of the named Debtors. Consequently, the Court finds that the lien of the deed of trust in favor of New Ulm State Bank lawfully extends to and encumbers the said property.

## VI.

■ The uncontested testimony at this hearing was to the effect that the real property, discussed hereinabove, has a value of approximately $35,000.00, while the machinery and equipment, also securing the indebtedness in favor of New Ulm State Bank, has a value of $52,300.00, or a total collateral valuation of $87,300.00. The total amount of the indebtedness effective the date of the hearing was $84,045.69, with a daily interest accrual thereafter at the rate of $30.68, per day. The Debtors consented that the machinery and equipment could be released from the provisions of the automatic stay so that New Ulm State Bank could repossess and liquidate those items of its collateral. If the value of the machinery and equipment were deducted from the amount of the indebtedness, the balance remaining would be $31,745.69, effective April 22, 1985. ($84,045.69 less $52,300.00) Again if the valuations are presumed correct, the balance of the indebtedness would be secured by collateral, i.e., the real property, having a value of $35,000.00. Therefore, effective the date of the hearing, there exists an equity cushion in the sum of $3,254.31. ($35,000.00 less $31,745.69) This equity cushion, which will erode fairly rapidly, constitutes adequate protection even if only for a short time. See *In Re: Mellor*, 734 F.2d 1396 (C.A. 9th Cir.—1984), and *In Re: San Clemente Estates*, 5 B.R. 605 (Bkrtcy. S.D.Ca.—1980). The Court realizes that this conclusion is reached on the basis of lay testimony as to valuations presented by Mrs. Brokmeyer. However, this testimony is the *only* evidence now before the Court touching on this issue. There was no impeachment of the testimony, so consequently, the Court is obligated to accept and recognize these valuations of both the real property and the machinery and equipment. In this same context, the Court must formulate its decision on the premise that the Debtors, at least for the present time, enjoy a positive equity in the real property.

## VII.

The motion now before the Court filed by New Ulm State Bank seeks relief from the provisions of the automatic stay found in 11 U.S.C. § 362(a) so that it might initiate proceedings to enforce its pre-petition lien against the Hydro real property. In order to gain relief from the automatic stay, the requirements of 11 U.S.C. § 362(d) must be met, which provide as follows:

(d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest; or

(2) with respect to a stay of an act against property under subsection (a) of this section, if—

(A) the debtor does not have an equity in such property; and

(B) such property is not necessary to an effective reorganization.

As set forth hereinabove, the only motion now before the Court is that seeking relief from the automatic stay. From the factual circumstances presented, the tests provided in 11 U.S.C. § 362(d) have not been met.

Consequently, the motion of New Ulm State Bank is hereby overruled at this time without prejudice to a subsequent filing.

### VIII.

The Debtors, however, are now obligated to treat New Ulm State Bank in their Chapter 13 plan, in order for said plan to be confirmable, in compliance with 11 U.S.C. § 1325(a)(5)(B)(i) and (ii), designating a value for the real property in the sum of $35,000.00.